
| | |
|---|---|
| LYNN ROWELL D/B/A BEAUMONT § <br> GREENERY; MONTGOMERY § <br> CHANDLER, INC.; PAULA COOK; § <br> TOWNSLEY DESIGNS, LLC; AND § <br> SHONDA TOWNSLEY, § <br> PLAINTIFFS, § <br> § <br> V. § <br> § <br> KEN PAXTON, IN HIS OFFICIAL § <br> CAPACITY AS ATTORNEY GENERAL § <br> OF THE STATE OF TEXAS, § <br> DEFENDANT. § <br> § | CAUSE NO. A:14-CV-190-LY |

## **ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Before the court is the above styled and numbered action, which the United States Court of Appeals for the Fifth Circuit remanded to this court for further proceedings in light of *Expressions Hair Design v. Schneiderman*, ___ U.S. ___, 137 S.Ct. 1144 (2017). *See Rowell v. Pettijohn*, No. 15-50168 (5th Cir. May 25, 2017). Each plaintiff is a Texas merchant who alleges that as applied the Texas law prohibiting them from imposing surcharges on consumers' credit-card purchases, Texas Business and Commerce Code section 604A.0021, violates the merchants' commercial free-speech rights under the First Amendment to the United States Constitution. U. S. Const. amend. I; *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.*, 447 U.S. 557, 561-66 (1980); Tex. Bus. & Comm. Code Ann. § 604A.0021 (West Supp. 2017) ("Anti-Surcharge law" or "law").[1] The

---

[1] Since this action was filed in 2014, the Texas Legislature has twice amended the Anti-Surcharge law and has redesignated the law from the Texas Finance Code to the Texas Business and Commerce Code. *See* Act of May 19, 2017, 85th Leg., R.S., ch.196, § 9, 2017 Tex. Sess. Laws Serv. 369, 371 (West) (codified at Tex. Bus. & Com. Code Ann. § 604A.0021 (West Supp. 2017)).

merchants request that the court permanently enjoin the State of Texas from enforcing the law against them.

The merchants filed this action in March 2014, contending that the Anti-Surcharge law is void for vagueness and violates the merchants' free-speech rights under the United States Constitution. Following a hearing on the State's motion to dismiss, the court concluded that the law properly regulated economic conduct–pricing–the law was not a regulation of speech, and the law was not void for vagueness.[2] Based on these holdings, the court dismissed Plaintiffs' Amended Complaint with prejudice. *Rowell v. Pettijohn*, No. 1:14-CV-190-LY, 2015 WL 10818660 (W.D. Tex. Feb. 4, 2015).

The merchants appealed and the circuit affirmed this court's decision. *Rowell v. Pettijohn*, 816 F.3d 73 (5th Cir. 2016). The merchants filed a petition for writ of certiorari to the Supreme Court of the United States, which the Supreme Court granted, vacated this court's judgment, and remanded the action to the circuit for further proceedings in light of *Expressions Hair Design*. *Rowell v. Pettijohn*, 137 S.Ct. 1431 (2017). The circuit then remanded the action to this court for further proceedings. *Rowell v. Pettijohn*, 865 F.3d 237, 238 (5th Cir. 2017).

On remand, the court allowed the parties to amend their pleadings and set a schedule for discovery, briefing, and oral argument on cross-motions for summary judgment. By the second amended complaint the merchants allege only that the Anti-Surcharge law violates their First

---

[2] Although Ken Paxton is the named Defendant, because Paxton appears in his official capacity as Attorney General of the State of Texas, the court refers to the Defendant as the "State."

Amendment rights to freedom of speech.[3] Pending, are Plaintiffs' Motion for Summary Judgment and For a Permanent Injunction and the State's Motion for Summary Judgment filed January 31, 2018 (Clerk's Document Nos. 78 & 79), each side's response, and each side's reply (Clerk's Document Nos. 86, 87, 88, & 89). Also before the court is the Corrected Plaintiffs' Statement of Undisputed Material Facts filed February 1, 2018 (Clerk's Document No. 83). On March 13, 2018, the court held a hearing on the cross-motions for summary judgment at which all parties were represented by counsel. Having considered the motions, responses, replies, Plaintiffs' Statement of Undisputed Material Facts, the case file, the arguments of counsel, and the applicable law, the court renders the following.

The amended Anti-Surcharge law provides:

> (a) In a sale of goods or services, a seller may not impose a surcharge on a buyer who uses a credit card for an extension of credit instead of cash, a check, or a similar means of payment.
>
> (b) This section does not apply to:
>
>> (1) a state agency, county, local governmental entity, or other governmental entity that accepts a credit card for the payment of fees, taxes, or other charges; or
>>
>> (2) a private school that accepts a credit card for payment of fees or other charges, as provided by Section 111.002.
>
> (c) This section does not create a cause of action against an individual for violation of this section.

---

[3] The merchants' amended pleading does not include their previously raised argument that the Anti-Surcharge law is impermissibly vague.

Tex. Bus. & Com. Code Ann. § 604A.0021 (West Supp. 2017). Additionally, the related enforcement provision was amended in 2015 and 2017, and redesignated from the Texas Finance Code to the Texas Business and Commerce Code. *See* Act of May 19, 2017, 85th Leg., R.S., ch.196, § 2, 2017 Tex. Sess. Laws Serv. 369, 370 (West) (Tex. Bus. & Com. Code § 604A.003 (West Supp. 2017). Although the law has been amended, it has not substantively changed since this action was filed in 2014.

The undisputed facts are that each merchant would like to tell their customers, without fear of the State enforcing the Anti-Surcharge law, that there is a "surcharge" if a customer pays for a purchase with a credit card and that there is "no additional charge" if the customer pays with cash or a check. More to the point, the merchants want to say why the surcharge is assessed–because of credit-card swipe fees. Further, the merchants will charge a surcharge that does not exceed the amount of the credit-card swipe fee the merchant pays to a credit-card company.

Also proceeding in tandem with this action are other federal-court cases challenging similar state anti-surcharge laws. *See Italian Colors Rest. v. Becerra*, 878 F.3d 1165 (9th Cir. 2018) (affirming summary judgment in favor of plaintiffs that as-applied the California anti-surcharge law violated plaintiffs' First Amendment free-speech rights); *Expressions Hair Design v. Schniederman*, 877 F.3d 99 (2d Cir. 2017) (on remand from Supreme Court, circuit certified question to New York Court of Appeals: "Does a merchant comply with New York's General Business Law § 518 so long as the merchant posts the total-dollars-and-cents price charged to credit card users?"); *Expressions Hair Design v. Schniederman*, 92 N.E.3d 803 (N.Y. 2018) (certified question accepted); *Dana's R.R. Supply v. Attorney General, Fla.*, 807 F.3d 1237 (11th Cir. 2015), *cert. denied*, 137 S.Ct. 1452 (2017) (reversing summary judgment in favor of Florida, holding Florida's anti-surcharge law

unconstitutional abridgment of merchants' free-speech rights, and remanding to district court for further proceedings); *Dana's R.R. Supply*, No. 4:14-CV-0134-RH/CAS (N.D. Fla. May 2, 2017) (judgment rendered enjoining Florida from taking action to enforce Florida's anti-surcharge law).

## *Expressions Hair Design*

The Supreme Court's opinion in *Expressions Hair Design* provides the starting point for this court's analysis. *Expressions Hair Design* held that New York's anti-surcharge law, which is similar to Texas's law, was not a typical price-control regulation because the law tells a merchant nothing about the amount the merchant is allowed to collect from a cash or credit-card-paying consumer. 137 S.Ct. at 1150-51. Under the law,

> Sellers are free to charge $10 for cash and $9.70, $10, $10.30, or any other amount for credit. What the law does regulate is how sellers may communicate their prices. A merchant who wants to charge $10 for cash and $10.30 for credit may not convey that price any way he pleases. He is not free to say "$10, with a 3% credit card surcharge" or "$10 plus $0.30 for credit" because both of those displays identify a single sticker price–$10–that is less than the amount credit card users will be charged.

*Id.* at 1151. The law regulates the communication of prices, not the prices charged, therefore, the New York law regulates speech. *Id.* The Supreme Court remanded the action for further inquiry about whether the New York law, as a speech regulation, survives First Amendment scrutiny. *Id.* The Supreme Court recognized the parties' dispute about whether the New York law is a valid commercial-speech regulation. However, as the record had yet to be developed on the matter, the Court declined to consider in the first instance whether the law survives First Amendment scrutiny, and remanded the action for a speech-regulation analysis.[4]

---

[4] The Supreme Court also summarily addressed the New York merchants' argument that the law was unconstitutionally vague and held that the law was not vague as applied to the merchants.

Proceedings in this action are at a similar crossroads; the action is before this court for a First Amendment speech-regulation analysis.

### *Summary-judgment review*

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). If the moving party carries its burden of showing that there is no genuine dispute as to any material fact, the burden shifts to the nonmovant to introduce specific facts or produce evidence that shows the existence of a genuine dispute regarding a material fact that prevents the grant of summary judgment in the movant's favor. Fed. R. Civ. P. 56(e); *see also Celotex*, 477 U.S. at 322–23. A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On cross motions for summary judgment, the court reviews each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party, determining for each side, whether judgment may be rendered in accordance with the Rule 56 standard. *Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 304 (5th Cir. 2010) (internal citation and quotation omitted); *Shaw Constr. v. ICF Kaiser Engrs., Inc.*, 395 F.3d 533 fn. 8 & 9 (5th Cir. 2004).

*Analysis*

Initially, the court finds no substantive difference between the New York anti-surcharge law and the Texas law. Further, the court finds that the Anti-Surcharge law restricts only commercial speech, that is, an expression related solely to the economic interests of the speaker and its audience. *Virginia Pharmacy Bd. v. Virginia Citizens Consumer Council*, 425 U.S. 748, 762 (1976). The First Amendment, as applied to the States through the Fourteenth Amendment, protects commercial speech from unwarranted governmental regulation. *Id.* at 761-62.

> [O]ur decisions have recognized the commonsense distinction between speech proposing a commercial transaction, which occurs in an area traditionally subject to government regulation, and other varieties of speech. The Constitution therefore accords a lesser protection to commercial speech than to other constitutionally guaranteed expression. The protection available for particular commercial expression turns on the nature both of the expression and of the governmental interests served by its regulation.

*Central Hudson Gas & Elec. Corp.*, 447 U.S. at 561-63 (citations omitted).

A state seeking to uphold a commercial restriction on speech carries the burden of justifying its law. *American Academy of Implant Denistry v. Parker*, 860 F.3d 300, 306 (5th Cir. 2017). Courts evaluate four questions to determine whether a state has met its burden to justify a commercial-speech regulation: (1) whether the speech concerns lawful activity and is not misleading; (2) whether the asserted governmental interest justifying the regulation is substantial; (3) whether the regulation directly advances the governmental interest asserted; and (4) whether the regulation is more extensive than necessary to serve that interest. *Central Hudson Gas & Elec. Corp.*, 447 U.S. at 566.

### *Deceptive or misleading speech*

The State argues that the Anti-Surcharge law is a legitimate restriction against deceptive and misleading commercial speech and therefore, no further First Amendment analysis is required. *See Id.* at 563-64.

A state is "free to prevent the dissemination of commercial speech that is false, deceptive, or misleading." *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 638 (1985). Here, the State contends that each of the merchants intends to impose a blanket surcharge on all credit-card purchases. This blanket-surcharge system will thereby provide the merchants with additional profit on certain credit-card purchases, when the fee actually paid to the credit-card issuer is not as large as the surcharge imposed for a particular transaction. Further, the State argues that the customer will not be truthfully informed of what is actually occurring–the customer will be led to believe that the merchants are merely passing along swipe fees when in reality the merchants will be pocketing the additional money collected in excess of the swipe fee charged.

The State's argument holds only if the merchants here seek to impose surcharges that are higher than the swipe fees charged to the merchants by credit-card companies. That, however, is not the merchants' argument. The merchants have made clear since filing this action that the amount of surcharge "would not exceed the amount of the merchant fees" that they must pay to credit-card companies. The merchants in this as-applied action are not seeking to extract additional profits by imposing surcharges in excess of the cost of accepting each credit card. Instead the merchants wish "to prominently and conspicuously display the exact amount of the surcharge, expressed as a percentage of the total price," and to limit the amount of the surcharge to the swipe fees incurred.

8

The merchants here have submitted declarations saying that they wish to put up signs stating–"[f]or example"–"a 3% surcharge will be assessed for every credit card purchase." The court finds that the submitted declarations are only examples, and that the merchants have made it clear that they will not charge a 3% surcharge if that amount were to exceed the amount of the swipe fees they pay. As the Supreme Court took the plaintiffs at their word in *Expressions Hair Design* as to the scope of their as-applied challenge, so to will this court in evaluating the constitutionality of Texas's Anti-Surcharge law as applied to the merchants. Contrary to the State's argument, the court finds no deceptive or misleading speech at issue in this action.

### *Texas's interests in protecting consumer welfare and promoting commerce*

The State argues that if the court concludes that the merchants' proposed speech is not deceptive or misleading, the merchants' claims fail because under the *Central Hudson* test, a state may regulate even "truthful and non-deceptive speech that merely proposes a commercial transaction" if: (1) there is a substantial state interest; (2) the regulation "directly and materially advances" that interest; and (3) the regulation is "narrowly drawn." *Bailey v. Morales*, 190 F.3d 320, 323 (5th Cir. 1999); *see also Central Hudson Gas & Elec. Corp.*, 447 U.S. at 563-64. The State argues that the Anti-Surcharge law directly advances Texas's substantial interests in protecting consumer welfare and promoting commerce.

A state may not justify a law on the grounds that consumers "would make bad decisions if given truthful information." *See Thompson v. Western States Med. Ctr.*, 535 U.S. 357, 374 (2002). The court concludes that the State has failed to demonstrate that protecting consumer welfare and promoting commerce are "actual interests served by the restriction," as opposed to a *post hoc* defense of the law. Unlike rational-basis review, courts applying *Central Hudson* may not come up with

9

hypothetical justifications for the law being challenged. *Edenfield v. Fane*, 507 U.S. 761, 770 (1993). Instead, the court must evaluate the law in light of "the precise interests put forward by the State." *Id.* The court finds that, other than a statement from the law's legislative history that one official wanted to "protect the consumer," the State has failed to provide any basis other than a generalized interest in consumer protection, which the court concludes is too abstract to provide an appropriate benchmark.[5]

Even if the State's asserted interests could be found to be adequate, there is no actual, empirical evidence before the court of harm to consumers or commerce, past or present, in restricting the merchants in this action from communicating to their customers that they will charge a surcharge for a credit-card purchase in an amount not to exceed the swipe fee charged the merchant.

### *Advancing the State's substantial interests and narrowly tailored*

The third and fourth prongs of *Central Hudson* are at the core of the constitutional analysis: the State bears the burden of showing that the challenged law "directly and materially advances a substantial state interest in a manner no more extensive than necessary to serve that interest." *American Academy of Implant Dentistry*, 860 F.3d at 308-09 (quoting *Central Hudson Gas & Elec. Corp.*, 447 U.S. at 566). The burden "is not satisfied by mere speculation or conjecture; rather, a governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." *Id.* (quoting *Edenfield*, 507 U.S. at 770-71).

---

[5] In the recent round of summary-judgment motions filed in this action, the State argues for the first time that consumers will be "fleece[d]" by paying surcharges that exceed the swipe fees. The court finds no evidence of this interest as an actual interest served by the restriction. The court declines to consider this state interest and considers only actual interests, if any, served by the surcharge restriction.

10

Even if there exists a viable basis here for the State's interests, the law nevertheless fails because the Anti-Surcharge law is "more extensive than is necessary to serve that interest." *Central Hudson Gas & Elec. Corp.*, 447 U.S. at 566. The court finds persuasive the reasoning in *Dana's R.R. Supply:* if the State is concerned that surcharges will result in profiteering, the State could "cap the difference in price that can be charged to customers paying with cash and those using credit cards." 807 F.3d at 1250. Alternatively, the State could require merchants to charge a surcharge that is no more than the swipe fees associated with any particular transaction. These ideas would advance the State's goals without suppressing information by prohibiting the merchants from telling their customers that they will pay more for using a credit card.

*Conclusion*

In light of *Expressions Hair Design*, the court concludes that the Texas Anti-Surcharge law is a commercial-speech regulation. Therefore, to survive as a constitutionally allowable governmental speech regulation, the State is required to establish that the Anti-Surcharge law directly advances a substantial governmental interest and is not more extensive than necessary to serve that interest. *Central Hudson Gas & Elec. Corp.*, 447 U.S. at 566. The court concludes that this the State has failed to do. The Texas Anti-Surcharge law as applied violates the merchants' commercial free-speech rights under the First Amendment. The court will grant the merchants' motion for summary judgment and will permanently enjoin the State of Texas from enforcing the Anti-Surcharge law against the merchants.

**IT IS ORDERED** that Plaintiffs' Motion for Summary Judgment and for a Permanent Injunction filed January 31, 2018 (Clerk's Document No. 79) are **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment filed January 31, 2018 (Clerk's Document No. 78) is **DENIED**.

SIGNED this  16th  day of August, 2018.

*/s/ Lee Yeakel*
LEE YEAKEL
UNITED STATES DISTRICT JUDGE